UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WENDY PEREZ,

        Plaintiff,

v.                                                          Case No:   6:20-cv-1341-LHP

COMMISSIONER OF SOCIAL
SECURITY

        Defendant.

## MEMORANDUM OF DECISION[1]

Wendy Perez ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").  Doc. No. 1. Claimant raises two arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed and remanded for further administrative proceedings.  Doc. No. 29, at 12, 28, 39.  The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and that the final decision of the Commissioner should be

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  *See* Doc. Nos. 23, 28–29.

affirmed. *Id.* at 40. For the reasons stated herein, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   PROCEDURAL HISTORY.

On January 22, 2018, Claimant filed applications for DIB and SSI, alleging a disability onset date of April 6, 2012. R. 15, 68, 267–70, 271–79.[2] The applications were denied initially and on reconsideration, and Claimant requested a hearing before an ALJ. R. Tr. 146–51, 153–54, 155–66, 167–71. A hearing was held before the ALJ on August 7, 2019, at which Claimant was represented by an attorney. R. 38–64. Claimant and a vocational expert ("VE") testified at the hearing. *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled. R. 15–28. Claimant sought review of the ALJ's decision by the Appeals Council. R. 244–46. On June 2, 2020, the Appeals Council

---

[2] The applications state that they were filed on March 12, 2018. R. 267–70, 271–79. However, according to the ALJ's decision and other record evidence, the applications were filed on January 22, 2018. R. 15, 68. For consistency, and because the application date is not dispositive of this appeal, the Court utilizes the application date stated by the ALJ: January 22, 2018. The Court also notes that Claimant was previously found disabled by the SSA. *See* R. 247–64. However, according to the parties, the SSA conducted a disability review in 2016, and determined that Claimant was no longer disabled. *See* Doc. No. 29, at 12 n.1 (citing R. 476). The present appeal concerns only the newly filed January 22, 2018 applications for DIB and SSI.

denied the request for review.  R. 1–6.  Claimant now seeks review of the final decision of the Commissioner by this Court.  Doc. No. 1.

## II.    THE ALJ'S DECISION.[3]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a).  R. 15–28.[4]  The ALJ found that Claimant met the insured status requirements of the Social Security Act through March 31, 2020.  R. 18.  The ALJ further found that Claimant had not engaged in substantial gainful activity since April 6, 2012, the alleged onset date.  *Id.*  The ALJ found that Claimant suffered from the following severe impairments:  epilepsy; attention deficit/hyperactivity disorder (ADHD);

---

[3] Upon a review of the record, counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.  Doc. No. 29.  Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

depression; anxiety; post-traumatic stress disorder (PTSD); mitral valve disease; and borderline intellectual functioning.  *Id.*[5]  The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 18–21.

Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform medium work as defined in the Social Security regulations,[6] except:

> [T]he claimant can climb ramps and stairs frequently, but never climb ladders, ropes or scaffolds.  She can balance frequently.  She can never work at unprotected heights or around moving mechanical parts.  The claimant can perform simple, routine and repetitive tasks.  She is able to perform simple work-related decisions.  The can (*sic.*) interact with supervisors, co-workers and the public occasionally.

R. 21.

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform any past relevant work, which included work as a cashier checker.  R. 26.  However, considering Claimant's age, education, work experience, and RFC, as well as the testimony of

---

[5] The ALJ concluded that Claimant's impairments of gastroesophageal reflux disease (GERD), hypothyroid disorder, glaucoma, and hearing loss were not severe impairments.  R. 18.

[6] Pursuant to the Social Security regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, [the SSA] determine[s] that he or she can also do medium, light, and sedentary work."  20 C.F.R. §§ 404.1567(c), 416.967(c).

the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, representative occupations to include Cleaner II, Bagger, and Kitchen Helper.  R. 26–27.  Accordingly, the ALJ concluded that Claimant was not disabled from the September 20, 2016 application date through the date of the decision.  *Id.*

## III. STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).  The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Court may not reweigh evidence or substitute its

judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV.    ANALYSIS.**

In the Joint Memorandum, which the Court has reviewed, Claimant raises two assignments of error:    (1) the ALJ erred in his consideration of a psychological evaluation report issued by Dr. Yamila Santos, Ph.D. and Dr. Brenda L. Arroyo, Ph.D.; and (2) the ALJ erred at step five of the sequential evaluation process because the VE's testimony does not constitute substantial evidence to support the ALJ's step-five findings.   Doc. No. 29.   Upon consideration, the Court finds the first assignment of error dispositive of this appeal.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."   *Lewis*, 125 F.3d at 1440.    In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources.    20 C.F.R. § 404.1545(a)(3).

Claimant filed her applications for DIB and SSI on January 22, 2018.   R. 15,

68, 267–70, 271–79.  Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings.  We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.  When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.[7]  The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).  We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The regulations further state that because supportability and consistency are the most important factors under consideration, the Commissioner "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative

---

[7] Subparagraph (c) provides that the factors to be considered include:  (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).

medical findings in [the] determination or decision." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).[8]

Pursuant to the new regulations, the Commissioner is not required to articulate how she "considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). "Courts have found that '[o]ther than articulating [her] consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how [she] considered any other factor in determining persuasiveness.'" *Bell v. Comm'r of Soc. Sec.*, No. 6:20-cv-1923-DCI, 2021 WL 5163222, at *2 (M.D. Fla. Nov. 5, 2021) (quoting *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019)). *See also Delaney v. Comm'r of Soc. Sec.*, No. 6:20-cv-2398-DCI, 2022 WL 61178, at *2 (M.D. Fla. Jan. 6, 2022) (noting that the ALJ may, but is not required to, explain how he or she considered the remaining factors besides supportability and consistency).

In this case, Claimant's argument centers on the ALJ's consideration of a psychological evaluation report issued by Drs. Santos and Arroyo, after they

---

[8] "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).

- 8 -

conducted four separate evaluations of Claimant.[9]  Doc. No. 29, at 13–17.  *See* R. 1236–49 (Exhibit 28F).  In the decision, the ALJ noted the psychological evaluation, and summarized portions thereof as follows:

> A psychological evaluation performed by Primary Psychology of Central Florida on September 18, October 2, 9, and November 5, 2018, showed the claimant referred to assess her overall functioning.  It was noted that the claimant completed high school and graduated with a standard diploma.  She never repeated a grade, but her grades were low.  She received services in school for speech/language delays but denied learning problems; however, she reported difficulties focusing.  She completed a certificate in dog grooming school and also completed a two year program at Everest University in criminal justice[.]  The claimant had been applying for jobs, with no call back as of yet.  Mental health history showed she began receiving mental health treatment in 2014 due to suicidal ideation.  She wanted to travel to Massachusetts to visit friend and her father said no.  The parents were concerned of her being taken advantage of.  The claimant became upset and verbalized wanting to jump from the roof.  Subsequently, she was psychiatrically hospitalized for two days with no other history of hospitalizations. The claimant's depression worsened in 2017 and the claimant reported symptoms of feeling down frequently, tiredness, fears about people following her, frequent mages of what transpired with her ex-girlfriend, nightmares, sleep disturbances, isolation and sadness (Ex. 28F/3-4).  The claimant was administered the Wechsler Adult Intelligence Scale (WATS-TV) test and scored a full scale IQ (FSIQ) of 85, verbal comprehension score of 89 and a perceptual reasoning score of 102.  Overall, intellectual ability was in the low average range and non-verbal ability was in the average range.  Working memory index was borderline and processing speed index was borderline.  Severe signs of depression were revealed on the Beck Depression Inventory (BDI) indicative of major depressive disorder.  Diagnostic impression was for unspecified neurocognitive disorder, unspecified trauma and stressor related disorder and major depressive

---

[9] Dr. Santos is a licensed psychologist and Dr. Arroyo is a post-doctoral resident. *See* R. 1248.  Claimant saw Drs. Santos and Arroyo on September 18, 2018, October 2, 2018, October 9, 2018, and November 5, 2018.  R. 1237.

disorder, recurrent episode, moderate, with anxious distress (Ex. 28F/5-l2).

R. 23–24.[10]

In the Joint Memorandum, Claimant contends that the ALJ "overlooked significant portions" of Drs. Santos and Arroyo's psychological evaluation. Doc. No. 29, at 15. She points to several examples of the evaluation that the ALJ allegedly failed to consider: (1) the opinion that Claimant's Processing Speed Index was in borderline range, indicating moderate difficulties in the ability to complete simple tasks in a timely manner; (2) Claimant's WRAML2[11] scores revealed deficits in attention and concentration, which indicates deficits in Claimant's ability to perform rote memory tasks and interfere with her ability to learn and remember information; and (3) the overall results from the evaluation indicated that Claimant presents with deficits in several cognitive areas, including sustained attention, processing speed, and working memory, and due to such

---

[10] The ALJ also points to the psychological evaluation to support isolated factual findings in the decision, including that Claimant's last seizure was in March 2018, which was triggered by not taking her medications; Claimant completed high school with special accommodations and a two-year program in criminal justice; and Claimant maintained employment in the past, drove a car, and completed college courses. R. 24–26. The ALJ also found the state agency psychological consultants' opinions persuasive in part because the ALJ found that the psychological evaluation by Drs. Santos and Arroyo demonstrated "severe mental health impairments with [Claimant] still retaining the ability to perform at a reduced level as noted by her ability to complete college courses and maintain employment in the past." R. 25.

[11] Wide Range Assessment of Memory and Learning Second Edition. *See* R. 1240.

deficits, normal tasks take longer to complete, Claimant may require increased effort to comply, and that could result in physical or mental fatigue.  *Id.* (citing R. 1246–47).  According to Claimant, the ALJ failed to state what weight, if any he accorded to Drs. Santos and Arroyo's opinions, and made findings that failed to account for such opinions.  *Id.*  And although at step three of the sequential evaluation process the ALJ found that Claimant had moderate limitations in her ability to concentrate, persist, or maintain pace, Claimant contends that the ALJ's RFC determination and hypothetical question to the VE failed to specifically account for such limitations, in particular, based on Drs. Santos and Arroyo's opinions, rendering the failure to consider said opinions harmful on the facts of this case.  *Id.* at 15–17.

In response, the Commissioner argues that Claimant fails to point to any actual contradictions between Drs. Santos and Arroyo's opinions and the RFC determination, rendering error, if any, in failing to consider Drs. Santos and Arroyo's opinions harmless.  *Id.* at 22, 24.  The Commissioner further asserts that Claimant's contention that the ALJ failed to state the weight afforded to their opinions is without merit because the new Social Security regulations do not require the ALJ to assign weight to any particular medical opinion.  *Id.* at 22–23.  According to the Commissioner, the ALJ clearly considered Drs. Santos and Arroyo's psychological evaluation, and the ALJ was under no obligation to

explicitly discuss every facet of the report.  *Id.* at 23.  Finally, the Commissioner contends that the ALJ's RFC determination implicitly accounted for the step-three finding that Claimant had moderate difficulties in maintaining concentration, persistence, or pace by limiting Claimant to simple, routine, repetitive tasks and simple work-related decisions.  *Id.* at 26–28.

On review, the Commissioner is correct that, as a general proposition, the ALJ is not required to assign any particular weight to medical opinions under the new regulations.  *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . .").  *See also Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-Orl-PDB, 2020 WL 5810273, at *4 (M.D. Fla. Sept. 30, 2020).  But, unlike what the Commissioner suggests, that does not mean that the ALJ was relieved of his obligation to address the opinions set forth in Drs. Santos and Arroyo's psychological evaluation at all.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (obligating the Commissioner to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] decision"); *Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021) (reversing decision under the new regulations where the ALJ did not address the supportability and consistency of opinions from two medical sources).  *See also Martinez v. Comm'r of*

*Soc. Sec.*, No. 6:19-cv-2379-ACC-DCI, 2020 WL 4820651, at *3 (M.D. Fla. Aug. 3, 2020), *report and recommendation adopted*, 2020 WL 4816070 (M.D. Fla. Aug. 19, 2020) (finding reversible error where, under the new regulations, the ALJ failed to "mention, let alone weigh" the opinions of medical professionals).

As discussed above, the ALJ did consider portions of Drs. Santos and Arroyo's psychological evaluation in determining Claimant's RFC. R. 23–24. But, as Claimant points out, the ALJ's decision is lacking discussion of certain aspects of the evaluation containing medical opinions. Doc. No. 29, at 15. Those opinions included that Claimant had moderate difficulties in the ability to complete simple tasks in a timely manner; that Claimant had deficits in attention and concentration interfering with Claimant's ability to perform rote memory tasks and her ability to learn and remember information; and that Claimant presents with deficits in several cognitive areas, including sustained attention, processing speed, and working memory, and due to such deficits, normal tasks take longer to complete, Claimant may require increased effort to comply, and that could result in physical or mental fatigue. *See* R. 1246–47.[12]  And, the ALJ nowhere discussed how he evaluated Drs. Santos and Arroyo's opinions, including a complete absence of any analysis

---

[12] *See also* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (defining medical opinion as "a statement from a medical source about what [the claimant] can still do despite [his/her] impairments(s)" and whether the claimant has any functional limitations or restrictions regarding certain enumerated abilities).

concerning the consistency and supportability factors.  *See* R. 23–24.

The Commissioner does not seem to dispute that Drs. Santos and Arroyo's psychological evaluation includes medical opinions, instead arguing that the ALJ's failure to address those opinions was harmless because none of the opinions conflict with the RFC.  Doc. No. 29, at 22–24.  Given that the ALJ errs (even under the new regulations) in failing to address the supportability and consistency of medical opinions, *see* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), the issue then, is whether the ALJ's failure to do so here was harmless.  *Compare Carson v. Comm'r of Soc. Sec.*, No. 6:21-cv-20-DCI, 2022 WL 294719, at *2 (M.D. Fla. Feb. 1, 2022) (applying harmless error analysis under new regulations to an ALJ's error in failing to mention or consider medical opinions, an error which the Court concluded was not harmless where it could have impacted the RFC determination), *and Spaar v. Kijakazi*, No. 5:20-CV-94, 2021 WL 6498838, at *5 (S.D. Ga. Dec. 28, 2021), *report and recommendation adopted*, 2022 WL 141613 (S.D. Ga. Jan. 14, 2022) (considering whether error in failing to address the supportability of medical opinions under the new regulations was harmless, and finding that any error could not be harmless where it could have a material impact on the RFC determination), *with Lankford v. Saul*, No. CA 20-0228-MU, 2021 WL 867847, at *4 (S.D. Ala. Mar. 7, 2021) (applying harmless error analysis under new regulations to conclude that any error by the ALJ in discounting certain medical opinions was harmless given that there were no

medical opinions regarding the claimant's functional limitations); *Jackson v. Saul*, No. 8:19-cv-2780-T-TGW, 2020 WL 6867408, at *4 (M.D. Fla. Nov. 20, 2020) (applying harmless error analysis under new regulations to ALJ's failure to evaluate medical opinions; concluding that failure was harmless because the symptoms on which the claimant relied did not constitute medical opinions, and even if they did, they were not adequate to support a claim of disability).

Upon consideration, the Court cannot conclude that the ALJ's failure to adequately consider Drs. Santos and Arroyo's opinions was harmless on the facts of this case. In particular, without citation to any authority in support, the Commissioner asserts as follows:

> Plaintiff points to notes from Dr. Santos' and Dr. Arroyo's evaluation indicating that she had "moderate difficulties" in her ability to complete simple tasks in a timely manner (Tr. 1246), but the vague reference to "moderate difficulties" does not establish an inability to perform simple, routine, repetitive work (Tr. 21). Similarly, the evaluation's finding that Plaintiff had "moderate difficulties" memorizing new information and then recalling it later (Tr. 1246) does not show that she would be unable to perform work that was simple, particularly where the work was routine and repetitive, thereby negating the need to memorize new information in the performance of the work.
>
> Likewise, Plaintiff fails to show that the RFC limitations do not accommodate her deficits in cognitive areas identified by Dr. Santos and Dr. Arroyos. Dr. Santos and Dr. Arroyos opined that these deficits might make it difficult for Plaintiff to complete normal tasks (Tr. 1247), but the ALJ did not restrict Plaintiff to normal tasks; rather, he restricted her to simple, repetitive, routine tasks, thereby limiting the taxing nature of the work she would need to perform (Tr. 21). Thus, the ALJ's RFC finding is not undermined or contradicted by the

>   opinion of Dr. Arroyo and Dr. Santos . . . .

Doc. No. 29, at 25–26.

However, the ALJ provides no explanation as to how these areas do not conflict, and the Commissioner points to no legal authority demonstrating that there is no conflict between Claimant's moderate difficulties in completing tasks in a timely manner and her ability to perform simple, routine, repetitive work; Claimant's moderate difficulties memorizing and recalling new information and her ability to perform simple work; or Claimant's difficulty in completing "normal tasks" and the restriction to "simple, repetitive, routine tasks." As such, the Court cannot agree with the Commissioner's argument that, on this record, the failure to address Drs. Santos and Arroyo's opinions in the psychological evaluation report was harmless. *See, e.g.*, *Carson*, 2022 WL 294719, at *2 (concluding that failure to discuss, mention, or consider medical opinions could not be harmless error under the new regulations where the opinions were relevant to the resulting RFC determination, and the potential impact of the opined-to limitations was reasonably disputed by the parties); *Spaar*, 2021 WL 6498838, at *5, *report and recommendation adopted*, 2022 WL 141613 (S.D. Ga. Jan. 14, 2022) (concluding that error in failing to address the supportability of medical opinions could not be harmless under the new regulations where the medical opinions, if adopted as a component of the claimant's RFC, could have resulted in the difference between performing light work and

being disabled).  *See also Grullon v. Saul*, No. 1:19-CV-24825-KMM, 2021 WL 1520701, at \*7 (S.D. Fla. Jan. 23, 2021*), report and recommendation adopted*, 2021 WL 972314 (S.D. Fla. Mar. 16, 2021) (reversing after concluding error in failing to weigh medical opinions could not be harmless under the older regulations where the ALJ found that the claimant had the RFC to perform medium work, perform simple and routine tasks, and make simple work-related decisions because the medical opinions not addressed stated that the claimant had deficits in attention, focus, and remembering details, problems making decisions, and difficulty with tasks demanding divided or alternating attention, which were inconsistent with the ALJ's finding regarding concentration, persistence, and pace).

This is especially true because, although the Commissioner argues to the contrary, the ALJ provided no explanation in the record to demonstrate that limiting Claimant's RFC to simple, repetitive tasks sufficiently accounted for the step-three finding that Claimant is moderately limited in concentration, persistence, and pace.  R. 15–28.  *See Winschel*, 631 F.3d at 1180 (rejecting argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work, but stating that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the

hypothetical to include only unskilled work sufficiently accounts for such limitations"); *Richter v. Comm'r of Soc. Sec.*, 379 F. App'x 959, 962 (11th Cir. 2010) (error by ALJ in RFC determination and question to VE was not harmless where inquiry conducted did not implicitly account for the claimant's deficiencies in concentration, persistence, and pace); *Kelley v. Colvin*, No. 3:13CV649-SRW, 2014 WL 4230038, at *6 (M.D. Ala. Aug. 26, 2014) (concluding that without medical evidence that the claimant remained capable of performing simple work as outlined in the RFC, the RFC limitation did not account for the claimant's difficulties in maintaining concentration, persistence, or pace, collecting authority). [13] Consequently, "on remand, the ALJ should make a specific finding as to whether the record medical evidence supports the conclusion that [Claimant] can engage in simple, routine tasks despite her moderate limitations in concentration, persistence and pace." *See Shortridge v. Astrue*, No. 1:11-CV-71-MP-GRJ, 2012 WL 1598012, at

---

[13] Notably, in all of the cases on which the Commissioner relies, the court determined that the medical evidence of record demonstrated that the ALJ adequately accounted for moderate limitations in concentration, persistence, or pace by limiting the claimant to simple, routine, and repetitive tasks because the medical evidence demonstrated that the claimant could perform such simple, routine, and repetitive tasks. *See* Doc. No. 29, at 27. Here, however, in light of the conflicting evidence and medical opinions of record, and because the ALJ did not explain how the record demonstrates that Claimant retained the ability to perform simple, routine, and repetitive tasks, the Court declines to find the Commissioner's post-hoc reliance on status examinations that were sometimes "benign and unremarkable, including logical and goal-oriented thought processes, fair to good attention, concentration, and memory, and fair to good insight and judgment," *see id.* at 28, sufficient on the current record to demonstrate that any error was harmless on the facts of this case.

*9 (N.D. Fla. Apr. 3, 2012), *report and recommendation adopted*, 2012 WL 1597518 (N.D. Fla. May 7, 2012). "In the absence of such a finding the ALJ cannot account for moderate difficulties in concentration, persistence and pace by simply limiting [Claimant] to simple, routine tasks." *See id.*

Based on the foregoing, the Court is constrained to reverse and remand this matter for further administrative proceedings.[14] Given that Claimant's first assignment of error is dispositive of this appeal, the Court declines to address Claimant's remaining arguments. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (no need to analyze other issues when case must be reversed due to other dispositive errors).

## V. CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[14] In remanding this matter for further administrative proceedings, the Court is not suggesting that the ALJ reach any particular conclusion. Instead, remand is necessary so that the ALJ can properly address the medical opinions and other evidence of record, regardless of the conclusion ultimately reached.

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Claimant and against the Commissioner, and thereafter, to **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on February 16, 2022.

*Leslie Hoffman Price*

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties